IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JERRY EUGENE WALKER,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **HON. STEVEN T. ONEILL, et al.** | : | **NO. 17-4973** |
| **Defendants.** | : | |

## MEMORANDUM

**SLOMSKY, J.**                                                                                                      **DECEMBER 6, 2017**

Plaintiff Jerry Eugene Walker, a prisoner incarcerated at the Montgomery County Correctional Facility, brings this civil action based on his numerous arrests and prosecutions in Montgomery County as well as the conditions at the Montgomery County Correctional Facility. Plaintiff seeks leave to proceed *in forma pauperis*. The Court will grant plaintiff leave to proceed *in forma pauperis* and dismiss his complaint.

I.     **FACTS**

Plaintiff's complaint appears to be a collection of at least two complaints combined with several exhibits and grievances that plaintiff submitted as one filing totaling ninety-two pages. Because of the manner in which the complaint has been submitted to the Court, it is difficult for the Court to understand the precise factual basis for plaintiff's claims and who plaintiff intended to name as defendants in this case. Having reviewed plaintiff's submission, the Court understands plaintiff to be raising claims based on several events that can be divided into two general sets. The first set of claims relate to plaintiff's numerous arrests and prosecutions since 2014. The second set of claims relate to plaintiff's recent incarceration at the Montgomery County Correctional Facility in 2017.

1

### A. Claims Related to Plaintiff's Arrests and Prosecutions

The caption of the document that plaintiff submitted as his complaint identifies the following defendants: (1) Honorable Steven T. O'Neill; (2) Meghan LaCheplle (identified as a parole agent); (3) Michael R. Gordon (identified as "chief"); (4) Todd Bergman (identified as "deputy chief"); (5) Kathleen Subbio (identified as "deputy chief"); (6) Stephanie Landes (identified as "deputy chief"); (7) the Honorable Francis Lawrence Jr. (misspelled Fransic); (8) Mark Talbot (identified as "chief of police"); (9) Andrew Bixler (identified as "officer"); (10) Officer Tim William (identified as "Sgt."); and (11) Emrich Raymond E. Jr. (identified as "officer").

Plaintiff generally alleges that "since being released from state prison in 2014, [he has been] doing nothing but getting arrested every other day and night by the Norristown Police Police [sic] Department and placed in a few of their holding cells for false charges which went on for almost 3 years straight!" The complaint reflects that the basis for many of the arrests was public drunkenness and disorderly conduct. Plaintiff alleges that on several occasions, he was forced "to sleep in the cold cells freezing to death!"

A review of public dockets reflects several criminal actions filed against plaintiff in Montgomery County, where Norristown is located, since 2014. Plaintiff was repeatedly charged with summary offenses, including public drunkenness and driving offenses, during that time period. In some cases he pled guilty and in others he was found not guilty. Magisterial District Judge Francis J. Lawrence Jr. has presided over most of plaintiff's criminal proceedings.

The complaint specifically references the following criminal proceedings, which the Court presumes provide the primary basis for plaintiff's claims in this lawsuit. In May of 2015, plaintiff was charged with criminal trespass, simple assault, burglary, and public drunkenness

2

and similar misconduct. *See Commonwealth v. Walker*, Docket No. CP-46-CR-0003959-2015 (Montgomery Cty. Ct. of Common Pleas). On May 20, 2015, Judge Lawrence held a preliminary hearing, dismissed the burglary charge, and held the remaining charges for court. Plaintiff subsequently pled guilty to simple assault and was sentenced to a period of incarceration.

After plaintiff's release, public dockets reflect that he was arrested by Officer Emrich on December 19, 2015 for terroristic threats, disorderly conduct, risking catastrophe, institutional vandalism at an educational facility, and public drunkenness and similar misconduct. *See Commonwealth v. Walker*, Docket No. CP-46-CR-0000499-2016 (Montgomery Cty. Ct. of Common Pleas). Plaintiff alleges that after his arrest, he was cuffed to the bars in a cell and was so upset that he set himself on fire and was taken to the hospital. Plaintiff alleges that Officer Emrich should have searched him more thoroughly before putting him in the cell and taken the lighter that he used to set himself on fire. Judge Lawrence held the charges over for court after a preliminary hearing and plaintiff ultimately pled guilty before Judge Steven T. O'Neill to disorderly conduct and institutional vandalism. Plaintiff was again sentenced to a period of imprisonment.

On June 22, 2016, plaintiff was arrested by Officer Bixler for criminal trespass, loitering, criminal mischief, and burglary. *See Commonwealth v. Walker*, Docket No. CP-46-0005074-2016 (Montgomery Cty. Ct. of Common Pleas). Judge Lawrence dismissed the burglary charge and held the remaining charges for court after a preliminary hearing. The remaining charges were nolle prossed on September 27, 2016.

In May of 2017, Judge O'Neill denied plaintiff's motion to remove Ms. Lacheplle as his probation/parole officer. Also in May of 2017, plaintiff was arrested by Officer Bixler and,

3

according to plaintiff, accused of a crime he did not commit. The docket for the resulting criminal proceeding reflects that plaintiff was charged with simple assault and harassment. *See Commonwealth v. Walker*, Docket No. CP-46-CR-0004041-2017 (Montgomery Cty. Ct. of Common Pleas). He recently pled guilty to three lesser charges of "disorderly conduct engaging in fighting" and was sentenced to ninety days of probation. *Id.* The complaint also references charges filed against plaintiff on January 11, 2017, which were dismissed after proceedings before Magisterial District Judge Lawrence. *See Commonwealth v. Walker*, Docket No. MJ-38115-CR-0000003-2017.

Plaintiff sought release from imprisonment while the charges were pending so he could be with his ailing mother, but Judge O'Neill denied his requests and plaintiff's mother unfortunately passed away while he was incarcerated. Plaintiff alleges that he was deprived of the opportunity to be with his mother "thanks to Hon. Steven T. O'Neill and Mrs. Meghan Lacheplle along with Michael B. Gordon, Chief of Probation/Parole and those under him, all not caring at all!" He appears to be alleging that Lacheplle was also responsible for improperly charging him with violating his parole on various occasions.

In that regard, plaintiff attached to his complaint motions and letters that he filed with the state court in which he claimed that Lacheplle improperly charged him with technical violations of his parole and that officers of the Norristown Police Department pursued false charges against him. He also attached to his complaint notices of parole violations and other notices that he received from the state court in connection with his various criminal proceedings. Despite alleging that Lacheplle had no basis to seek revocation of his parole, plaintiff admits in one filing to having committed at least one violation, i.e., having tested positive for cocaine.

4

Plaintiff attached to his complaint additional exhibits and portions of form complaints that he completed, which suggest his intention to raise additional claims against additional defendants. For instance, one page indicates that plaintiff would like to bring claims against the prosecutor on one of his cases for "intimidating" one of plaintiff's witnesses by informing her that testifying in plaintiff's case could affect her own criminal case. Additional exhibits reflect that he was dissatisfied with the conditions at the Montgomery County Correctional Facility, as discussed further below.

## B. Claims Related to the Conditions in which Plaintiff was Incarcerated at the Montgomery County Correctional Facility

The second portion of plaintiff's complaint includes a page reflecting a second caption naming the following defendants: (1) William J. Catania; (2) Rev. Jerome F. Coleman; (3) Eileen W. Behr; (4) Stanley M. Turtle; (5) Julio Algarin; (6) Martha (Marcy) D'Orazio; (7) Paul Corbo; (8) Jonath Cohen; and (9) Chuck Colure. A few pages later in the complaint, plaintiff includes pages of a form complaint that he completed to identify the following individuals as defendants: (1) Julio Algarin; (2) Martha (Marcy) D'Orazio; (3) Paul Carbo; (4) Chuck Colar; (5) Jonathen Cohen; (6) Ms. Kielly; (7) G. Andrew Szekely; (8) Nancy L. Weiman; (9) William J. Catania; (10) Rev. Jerome F. Coleman; (11) Eileen W. Behr; and (12) Stanley M. Turtle. Each of those pages bears a heading stating: "read other sheets of list of all names."

This portion of plaintiff's filing consists of numerous statements and grievances that plaintiff filed concerning various conditions at the Montgomery County Correctional Facility beginning in August of 2017. Some of plaintiff's concerns reflect general dissatisfaction with how the prison is managed. His primary allegations loosely fall within four groups.

First, plaintiff contends that the facilities are not sufficiently clean. He appears to be alleging that unsanitary conditions and overcrowding resulted in him contracting a disease

5

(apparently MRSA), caused him to be housed in a four-man cell, and resulted in the deprivation of exercise. Second, plaintiff appears to be dissatisfied with the medical treatment he received and the speed with which he received it. Third, plaintiff alleges that Ms. Kielly, a prison staff member, deprived him of his rights by "not allowing [him] to receive help by her workers" in the law library. He also alleges that Ms. Kielly does not permit inmates to use the restroom during certain two-hour periods, including during Muslim services, which he casts as a violation of his religious rights. Fourth, plaintiff alleges that the prison is understaffed and that prison officials will not provide him with his account statement or other paperwork, that staff is rude to inmates and yell at them, and that staff does not provide grievance forms when requested.

The Court understands plaintiff to be pursuing constitutional claims under 42 U.S.C. § 1983, and seeking damages for the violations of his rights. Plaintiff also filed a document that was docketed as a "statement," in which he alleges that John E. Savoth is the prosecutor on his case who prevented him from seeing his mother before she passed. He also reiterates allegations about the conditions in the Montgomery County Correctional Facility. He subsequently filed an "Addendum" to his complaint, which essentially duplicates his allegations about the conditions at the jail and attaches a motion that plaintiff filed in state court to remove the prosecutor in two of his cases.

## II. STANDARD OF REVIEW

Plaintiff's motion to proceed *in forma pauperis* is granted because it appears that he is incapable of paying the fees to commence this civil action.[1]

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A district court may *sua*

---

[1] As plaintiff is incarcerated, he will be obligated to pay the filing fee in installments pursuant to 28 U.S.C. § 1915(b).

*sponte* dismiss a complaint that does not comply with Rule 8 if "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted).

Furthermore, as plaintiff is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) require the Court to dismiss the complaint if it is frivolous or fails to state a claim. A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995). To survive dismissal for failure to state a claim, the complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* As plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

#### A. Plaintiff's submission fails to comply with Federal Rules of Civil Procedure 8, 10 and 20

Plaintiff's complaint does not comply with Federal Rules of Civil Procedure 8, 10, and 20, because it is comprised of a compilation of exhibits and statements, includes multiple captions with different defendants, combines a multitude of unrelated claims together in one lawsuit, and relies on several filings to state a claim.

The purpose of Federal Rules of Civil Procedure 8 and 10 is to make clear to the Court and the defendants the factual basis for a plaintiff's claims so that the defendants can meaningfully respond to those claims. *See, e.g., Fabian v. St. Mary's Med. Ctr.*, No. Civ.A. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) ("Federal Rule of Civil Procedure 8 requires that

7

pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue.") (quotations omitted); *Young v. Centerville Clinic, Inc.*, No. Civ.A. 09-325, 2009 WL 4722820, at *3 (W.D. Pa. Dec. 2, 2009) ("The purpose of Rule 10 is to create clarity in pleadings, which allows a defendant and the Court to determine whether there are sufficient facts to support a claim entitling a plaintiff to relief."). To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief. *See Travaline v. U.S. Supreme Court*, 424 F. App'x 78, 79 (3d Cir. 2011) ("Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 'a demand for the relief sought.'") (quoting Fed. R. Civ. P. 8(a)(2), (3)); *see also id.* ("Each averment must be 'simple, concise, and direct.'") (quoting Fed. R. Civ. P. 8(d)(1)). "This standard operates in tandem with that of Rule 10," which requires that a pleading contain a caption with the Court's name and the names of the parties, and that claims be listed in numbered paragraphs. *Fabian*, 2017 WL 3494219, at *3 (citing Fed. R. Civ. P. 10).

Plaintiff's complaint contains several captions, identifies numerous defendants, and is essentially a disjointed compilation of documents that relies heavily on exhibits to articulate plaintiff's claims. By presenting his claims in this manner, plaintiff has made it difficult for the Court to understand the basis for his lawsuit and the nature of his claims against each defendant. The Court has done its best to make sense of plaintiff's submission and, as a result, can comprehend the gist of some his claims. However, it is still unclear who, exactly, plaintiff intended to name as defendants and how each of those defendants are involved in the conduct alleged. It is also unclear precisely what conduct plaintiff is challenging. For instance, it is not clear from the complaint whether plaintiff is challenging every arrest, incarceration, and

prosecution since his release in 2014, or whether he is only challenging certain arrests and prosecutions. As a result, no defendant could be expected to meaningfully respond to plaintiff's complaint in its current form. *See Binsack v. Lackawanna Cty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011) (per curiam) ("The compliant defies any attempt to meaningfully answer or plead to it, and it left the defendants having to guess what of the many things discussed constituted deliberate indifference on their part, or whether Binsack intended to also include a count that correctional officials failed to protect him from other inmates. Moreover, his voluminous exhibits, do not, without the required 'short and plain statement,' communicate the nature of his claim, and would, in any event, be insufficient to satisfy Rule 8(a).").

The complaint also fails to comply with Federal Rule of Civil Procedure 20. Rule 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 724 (1966)). "But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *McKinney v. Prosecutor's Office*, No. CIV. 13-2553 KM MCA, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Here, plaintiff improperly joined claims about numerous arrests and a minimum of five criminal proceedings together with claims challenging a multitude of conditions at the Montgomery County Correctional Facility. His complaint must be divided into at least two lawsuits—one based on his arrests and criminal proceedings, and one challenging the conditions of his confinement. However, because it is not clear who the defendants are and the precise nature of the claims that plaintiff is raising against each defendant, it is not clear if there are additional problems with joinder at this time. At this point, the Court will allow plaintiff to proceed on claims generally related to his arrests, prosecutions, and parole violations in this civil action, Number 17-4973. Plaintiff will be required to file an amended complaint, however, because his claims do not comply with Rule 8, as discussed above. If plaintiff seeks to proceed on any claims based on the conditions at the Montgomery County Correctional Facility, he must initiate a new lawsuit by filing a new complaint and *in forma pauperis* motion. In other words, plaintiff may proceed on claims related to his arrests and prosecutions in this civil action if he files an amended complaint, but he must initiate a new civil action by filing a separate complaint if he would like to bring claims arising out of the conditions at the jail where he is incarcerated.[2] *See Pruden v. SCI Camp Hill*, 252 F. App'x 436, 438 (3d Cir. 2007) (per curiam) (agreeing that complaint failed to comply with Rules 8, 10, and 20, because the "complaint avers multiple constitutional violations that occurred over a span of seven years" and raised "claims [that] arise out of different transactions and occurrences, and in many instances [plaintiff failed] to specify the defendant or defendants that committed the alleged constitutional violation.").

---

[2] As the Court understands plaintiff to be raising claims based on the conditions at the Montgomery County Correctional Facility since August of 2017, dismissal of his claims without prejudice to refiling a new civil action will not affect the timeliness of those claims, which are governed by a two-year statute of limitations. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007).

10

## B. There are Numerous Defects in Plaintiff's Claims

Although plaintiff's complaint is too disorganized and confused to proceed in its current form, the Court can discern a general sense of some of the claims that plaintiff seeks to pursue. Many of those claims suffer from defects, some of which are not curable. As several problems with plaintiff's claims are apparent from the complaint, the Court will discuss those claims below.

### 1. Challenges to Plaintiff's Arrests and Prosecutions

To state a claim for false arrest under the Fourth Amendment or Pennsylvania law, a plaintiff must allege facts establishing that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. To state a claim for false imprisonment, a plaintiff must establish that he was unlawfully detained, which, in the context of an arrest, generally depends on whether the detention was supported by probable cause. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012). A plaintiff alleging malicious prosecution must establish that the defendants initiated a criminal proceeding against the plaintiff—without probable cause and with malice—and that the proceeding terminated in the plaintiff's favor. *See McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009).

Additionally, Pennsylvania's two-year statute of limitations applies to plaintiff's § 1983 claims. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the

11

time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. Where criminal proceedings do not follow an arrest, a false arrest claim generally accrues on the date of the arrest because that is when the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *see also Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998). The two-year statute of limitations on a malicious prosecution claim accrues when the criminal proceeding in question terminates in the plaintiff's favor, because that is when the cause of action is complete. *See Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010); *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989).

As noted above, it is unclear from plaintiff's complaint whether he is challenging every arrest, incarceration, and prosecution since his release in 2014, or whether he is only challenging certain of those events, which makes it difficult to assess whether he has stated a claim. Additionally, because plaintiff has pled his claims generally—i.e., by suggesting that all of his arrests and prosecutions have been improper rather than discussing the circumstances of each one—he has not established that probable cause was lacking for each incident.

Additionally, some of plaintiff's claims appear to be time-barred. Plaintiff filed his complaint on October 30, 2017.[3] Accordingly, unless tolling applies, he may not proceed on claims that accrued before October 30, 2015, because he filed those claims after the two-year statute of limitations expired. If plaintiff is challenging arrests and imprisonment that occurred

---

[3] Pursuant to the prison mailbox rule, a prisoner's complaint is considered filed at the time he or she hands it over to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Terrell v. Benfer*, 429 F. App'x 74, 75 n.1 (3d Cir. 2011) (per curiam). Plaintiff's complaint reflects that he handed it to prison authorities for mailing on October 30, 2017.

12

prior to October 30, 2015, or prosecutions that terminated in his favor before October 30, 2015, his claims based on those events are time-barred.

Additionally, "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). As public dockets reflect that plaintiff has pled guilty to some of the criminal charges that were filed against him, he is precluded from claiming that those charges are false or otherwise challenging the prosecutions that led to those convictions. That is so regardless of whether habeas relief is still available to plaintiff. *See Williams v. Consovoy*, 453 F.3d 173, 179 (3d Cir. 2006). Accordingly, if plaintiff files an amended complaint, he may not challenge the filing of any charges to which he pled guilty.

2. **Judicial Immunity Bars Plaintiff's Claims against Judges**

Plaintiff raises claims against Judge Lawrence and Judge O'Neill based on the manner in which those judges handled his criminal cases. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as

13

they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). As it is apparent that plaintiff is suing Judge Lawrence and Judge O'Neill based on the manner in which they ruled in or handled his criminal cases, his claims against those judges are barred by judicial immunity.

### 3. **Prosecutorial Immunity Precludes Plaintiff from Suing Prosecutors for Prosecuting Him**

A prosecutor is absolutely immune from individual liability under § 1983 for acts taken "within the scope of his duties in initiating and pursuing a criminal prosecution." *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). The Court understands plaintiff to be pursuing claims against individuals who prosecuted him at least in part based on their pursuit of charges against him on behalf of the Commonwealth. If plaintiff is, in fact, raising any such claims, he may not proceed on them because they are barred by prosecutorial immunity.

### 4. **Claims Based on the Conditions at Montgomery County Correctional Facility**

The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). As plaintiff's status during his recent incarceration is not clear from the complaint, the Court will analyze the complaint under both amendments. To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). He must also establish that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To establish a basis for a

14

Fourteenth Amendment violation, a prisoner must establish that the conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). That inquiry generally turns on whether the conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538-39; *Hubbard*, 399 F.3d at158.

Regardless of whether a prisoner is a convicted inmate or pretrial detainee, he must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs to state a claim based on inadequate medical care. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Edwards v. Northampton Cty.*, 663 F. App'x 132, 136 (3d Cir. 2016) (per curiam). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (quotations omitted). Although supervisors and high-ranking officials may be held liable for violating a plaintiff's rights if they participated in the wrongdoing by virtue of their own misconduct or their maintenance of a policy or custom that violated plaintiff's rights, supervisors are not subject to liability under § 1983 based solely on the conduct of their employees. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual

15

actions, has violated the Constitution."); *see also Powell v. Weiss*, 757 F.3d 338, 346 (3d Cir. 2014).

Here, plaintiff has failed to make clear who he is naming as defendants or how each defendant was involved in violating his rights. Although he suggests that he has been dissatisfied with the quality of medical care at the prison, he has not explained any facts or described events that would support a conclusion that prison officials were deliberately indifferent to his serious medical needs. While he describes several conditions at the jail that could give rise to a basis for a claim, he has not connected those allegations to any defendants in a manner that would allow him to move forward on any claims at this time. As "prison inmates do not have a constitutionally protected right to a grievance process," plaintiff cannot state any constitutional claims based solely on the defects in the grievance system. *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases). Likewise, yelling and rude behavior by prison staff, while inappropriate, does not give rise to a constitutional claim. *Robinson v. Taylor*, 204 F. App'x 155, 156 (3d Cir. 2006) (per curiam) ("It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment.").

### 5. Claims Against Ms. Kielly

Plaintiff appears to be claiming that Ms. Kielly denied him access to the courts and violated his religious rights. Prisoners retain a right to access the courts to pursue direct or collateral challenges to their sentences and to challenge their conditions of confinement. *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). A prisoner claiming that the defendants' actions "have inhibited [his] opportunity to present a past legal claim[] . . . must show (1) that [he] suffered an 'actual injury' – that [he] lost a chance to pursue a 'nonfrivolous' or 'arguable'

16

underlying claim; and (2) that [he has] no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "[T]he underlying cause of action[] . . . is an element that must be described in the complaint." *Christopher*, 536 U.S. at 415. Here, plaintiff does not provide any information about how Ms. Kielly's conduct prevented him from pursuing any nonfrivolous claims. Accordingly, he has not stated a claim against her for denying him access to the courts. *See Adekoya v. Chertoff*, 431 F. App'x 85, 89 (3d Cir. 2011) (per curiam) (plaintiff failed to state a claim because, "[a]s the District Court noted, [plaintiff] did not specify the nature of any of his pending suits, and, more fundamentally, failed to allege that he suffered any prejudice because he could not access a law library during the approximately three weeks he was at the BCJ").

To the extent that plaintiff alleges violation of his religious rights under either the First Amendment right or the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, et seq., "[t]he threshold question in any First Amendment or RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion." *Robinson v. Superintendent Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (per curiam). Here, plaintiff has not made clear how being prevented from using the bathroom for a two-hour period substantially burdens his religion, so he has not stated a claim under either the First Amendment or RLUIPA.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss plaintiff's complaint. Plaintiff is given leave to file an amended complaint in this lawsuit, Civil Action Number 17-4973, with respect to any claims arising out of his arrests, imprisonment, prosecutions, or parole violations. Any

17

amended complaint must name all of the defendants in the caption and must clearly explain how the defendants were involved in violating plaintiff's rights. Additionally, any amended complaint shall not pursue time-barred claims, claims that are barred by principles of judicial or prosecutorial immunity, or claims that challenge convictions that have not been invalidated.

If plaintiff seeks to pursue claims based on the conditions at the Montgomery County Correctional Facility, he must initiate a new civil action that is separate from this case and that is separate from any amended complaint he files in this case. If he initiates a new civil action, any complaint he files in that action must clearly list all of the defendants in the caption and must clearly state the basis for plaintiff's claims against each defendant. Additionally, if plaintiff files a new civil action to pursue his claims based on the conditions at the Montgomery County Correctional Facility, he must either pay the $350 filing fee and $50 administrative fee or file a motion for leave to proceed *in forma pauperis* with a certified copy of his account statement for the prior six-month period if he can obtain one. As in this case, he will be required to pay the filing fee in installments if he is granted leave to proceed *in forma pauperis*. An appropriate order follows.